Affirmed and Opinion filed November 14, 2002
















Affirmed and
Opinion filed November 14, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-01046-CV

____________

 

IN THE INTEREST OF E.A.G.

 

 

 

On Appeal from
the 314th District Court

Harris County, Texas

Trial Court
Cause No. 00-07461J

 

 

 

O P I N I O
N

            Appellant, Ilene G., challenges the
termination of her parental rights.[1]  The Texas Department of Protective and
Regulatory Services filed an original petition to terminate the parent-child
relationship between Ilene G. and Felix G. and their minor child, E.A.G.  Appellant argues there was legally
insufficient evidence or, in the alternative, factually insufficient evidence
to support the trial court’s findings that (1) she engaged in conduct or
knowingly placed the child with persons who engaged in conduct that endangered
the 

 class=Section2>

physical
and emotional well-being of the child; and (2) the termination of the
parent-child relationship was in the best interest of the child.  We affirm.

I.  Factual Background

            Prompting the Department’s
involvement in the case was an October 2000 incident of domestic violence
between appellant and Felix G.  During
the physical altercation, Felix G. knocked appellant to the ground, causing her
to land on E.A.G. and bruise him on both his lip and his leg.  Appellant called the police and ultimately
took the child to the hospital.  It was
at this point that the child came into the Department’s care.

            Soon thereafter, the Department
presented appellant and Felix G. with a Family Service Plan outlining various
tasks to be completed to secure reunification with E.A.G.  Among other matters, the plan required that
appellant (1) complete a drug assessment; (2) undergo psychological counseling;
(3) attend anger management classes; and (4) attend group counseling sessions
for victims of domestic violence.  The
plan also required that she either pursue employment opportunities or obtain
her high school graduation equivalency degree.

            Appellant signed the plan and
indicated her willingness to abide by its terms.  She stated that she understood that
successful completion of the plan was a prerequisite to reunification.  At the outset, the Department’s caseworker,
Phillip Furgason, explained to appellant that a
failure to complete the plan might result in the institution of termination
proceedings.  Furgason
testified that he warned appellant of this consequence at least four or five
times since May of 2001.  According to Furgason, appellant indicated that she understood on each
occasion. 

            Although appellant showed some
initiative to comply with the plan in the beginning, she ultimately succumbed
to a lack of diligence in meeting the plan’s requirements.  While she did complete the psychological
component, the drug assessment, and the parenting requirement, she failed to
complete the required counseling because she was terminated from the
group.  Appellant testified that she was
terminated for being late to only a few sessions. However, Furgason
contradicted her, testifying that he received reports that she missed
multiple—certainly more than a few—sessions outright.  She did admit during her testimony that she
had been terminated twice for non-attendance at therapy sessions.  As of the date of trial, appellant had not
attended any anger management classes or family counseling with Felix G.

            Appellant also failed to meet the
plan’s employment requirement.  As of
trial, appellant had not found a job or enrolled in a GED course.  She admitted that it would be in the best
interest of the child to be placed with someone who could provide for his
needs, but that she could not do so at the time.  Although she stated that she kept track of
her work history, she could not recount some very basic details about previous
jobs she claims to have held.  She
testified she was trying to find a job but that she had never followed up with
the career agency assigned to her by the Department.

            Also of concern to the Department
was appellant’s precarious living arrangement. 
Appellant admitted that she moved quite frequently, living in five
different residences in the span of a single year.  She was evicted from one apartment due to the
landlord’s concerns about frequent visits by the police.  Appellant claimed at trial that the police
were looking for her runaway sister.  She
testified she was currently on the waiting list for an apartment, but that the
wait might be upwards from six months to a year.  At the time of trial, appellant lived with
her aunt, and at any given time, as many as 
six other individuals were living there as well.  Though she denied having lived in an
automobile, the Child Advocate, Ivana Shumberg, testified that Felix G. had told her they had
indeed lived in a vehicle.

            Throughout the termination
proceeding, appellant expressed uncertainty about her abilities both as a
parent and as a provider of a stable environment.  She contended that she could have completed
the requirements in a year but did not do so because she wasn’t “stable” at the
time.  She remarked that she was “still
not stable” but could be if the Department would extend its deadlines and
simply allow her more time.  When asked
how she would handle the possible return of her child, she replied that she
“[couldn’t] talk for future.” She added that she simply didn’t know how she
would be able to provide for the child at the present time.  Knowing that the possibility of termination
loomed, appellant failed to complete all of these very basic requirements.

            Though the Department initially
recommended reunification, it ultimately decided to pursue termination against
both appellant and Felix G.  On
cross-examination, Furgason testified that he did not
believe reunification was possible. 
After a bench trial, the trial court found appellant had engaged in
endangering conduct and that the termination of appellant’s parental right’s
was in the best interest of the child.

II.  Standard of Review

            Appellant challenges both the legal
and factual sufficiency of the trial court’s findings that her conduct
endangered the well-being of the child and that termination was in the best
interest of the child.  We remain mindful
that parental rights are precious and constitutionally protected.  The parental right to the companionship,
care, custody and management of children is protected to the degree that they
are of federal constitutional dimensions.  See Santosky v.
Kramer, 455 U.S. 745,
758–59 (1982); In re D.T., 34 S.W.3d
625, 629 (Tex. App.—Fort Worth 2000, pet. denied).  To terminate appellant’s parental rights, the
Department must first prove that she committed one of the acts or omissions
prohibited by the Family Code.  Tex. Fam. Code. Ann.
§ 161.001(1) (Vernon 1996 & Supp. 2002). 
Second, the termination of parental rights must be in the best interest
of the child.  Id. §
161.001(2).  Both elements must be established,
and proof of only one of the two elements does not relieve the Department of
the burden of proving the other.  See Holley v. Adams, 544 S.W.2d 367, 370 (Tex.
1976).  Furthermore, the Department must
prove the two elements with clear and convincing evidence.  §
161.001 (Vernon 1996 & Supp.2002); see
Santosky, 455 U.S. at 768–770
(requiring clear and convincing evidence standard in termination cases); In re G.M., 596 S.W.2d 846, 846–47 (Tex. 1980)
(same). 

            With respect to the proscribed acts
and omissions, the Department alleges that appellant engaged in conduct or
knowingly placed the child with persons who engaged in conduct which endangered
the physical or emotional well-being of the child.  Id. §
161.001(2).  As required, the Department
also asserts that the best interest of the child would be served by termination
of appellant’s parental rights.  The
trial court found the Department met both elements by clear and convincing
evidence.  Appellant challenges both the
legal and factual sufficiency of the evidence on each of these required
elements.[2]

            We review the legal sufficiency of
the evidence by considering all the evidence in the light most favorable to the
prevailing party, indulging every reasonable inference in that party’s
favor.  Horvatich v. Texas Dep’t of Protective & Regulatory Servs., 78 S.W.3d
594, 596 (Tex.
App.—Austin 2002, no pet. h.)  To prevail
on a legal sufficiency complaint, the appealing parent must demonstrate there
is no more than a scintilla of evidence supporting the finding.  In re
R.D., 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied).

            Appellant also challenges the
factually sufficiency of the trial court’s findings.  Our supreme court recently articulated the
proper standard of review to apply to factual sufficiency challenges in appeals
arising from termination proceedings.  See In re C.H., 45 Tex. Sup. Ct.
J. 1000, 1005, 2001 WL 1903109 (July 3,
 2002).  Confusion often
reigned over many court decisions because of the conflict between the
heightened burden of proof at trial and the traditional standard of review in
factual sufficiency challenges applicable in preponderance cases.  Id. at
*5–8.  In C.H., the supreme court resolved the issue by promulgating a
revised standard for use in factual sufficiency challenges in termination
cases.  Id. at
*8.  Under the new rule, termination
findings must be upheld against a factual sufficiency challenge if the evidence
is such that the finder of fact could reasonably form a firm belief or
conviction about the truth of the State’s allegations.  Id.  Thus, we review the trial court’s findings
under this new standard of review.

III.  Discussion

            In reviewing the legal and factual
sufficiency in this case, we first determine whether the Department proved by
clear and convincing evidence that appellant engaged in conduct or knowingly
placed the child with persons who engaged in conduct which endangers the
physical or emotional well-being of the child. 
As used in the Texas Family Code, the term “endanger” means to expose to
loss or injury or to jeopardize, and endangerment can occur through both the
acts and omissions of the parent.  In re M.C., 917 S.W.2d 268, 269 (Tex. 1996); Phillips v. Texas Dep’t of Protective & Regulatory Servs., 25 S.W.3d 348, 354 (Tex.
App.—Austin 2000, no pet.).  The
questioned conduct need not be directed toward the child to endanger the
child’s emotional well-being.  See Harris v. Herbers,
838 S.W.2d 938, 942 (Tex. App.—Houston [1st Dist.] 1992, no writ).  The child does not need to be physically
injured for endangerment to occur.  Id.  Despite this, the parental misconduct must
amount to more than a threat of metaphysical injury or the possible ill effects
of a less-than-ideal family environment. 
See Texas Dept. of Human Servs. v.
Boyd, 727 S.W.2d 531, 533 (Tex.
1987).  With this framework as our guide,
we look to the particular allegations of endangering misconduct made by the
Department against appellant.

            Appellant argues that the Department
based its recommendation for termination on a singular act of domestic
violence.  At trial, appellant maintained
that though she and Felix G. had argued in the past they had not laid hands
upon one another before October of 2000. 
She also claimed they had not violently confronted each other since that
incident.  Felix G. also testified that
he had never before struck appellant and that the October incident was the
first fight in which violence erupted.[3]

            Appellant’s and Felix G.’s testimony was called into question by two other
witnesses.  Both Furgason
and Shumberg remarked upon appellant’s tendency to
misrepresent her history of family violence. 
Furgason met with appellant and Felix G.
shortly after the Department became involved with the case.  At this meeting, which Furgason
described as a “pretty light hearted” conversation, both appellant and Felix G.
told him that they had fought often and that appellant usually instigated the
violence.  Shumberg
testified that appellant recounted the “many times” that Felix G. had beaten
her.  According to Furgason,
neither appellant nor Felix G. considered the fighting a very serious
problem.  Furthermore, Furgason testified that at this initial conversation
appellant did not seem remorseful or act as if the domestic abuse was something
she should regret.  According to Shumberg, appellant didn’t understand the Department’s
motivations because she believed such incidents to be commonplace in other
households.  Shumberg
also testified that she was concerned with appellant’s outlook on domestic
violence.

            The trial court could have found
that appellant and Felix G. misrepresented their general history of domestic
violence and downplayed the specific incident which led to the intervention of
the Department in the first place. 
According to Furgason’s testimony, appellant acknowledged
at their first meeting that she had indeed fallen on the child after the
physical altercation.  At this same
initial interview, Furgason recalled that Felix G.
recounted the event in the same manner. 
At trial, however, both appellant and Felix G. offered different
versions of the night in question. 
Appellant said she didn’t know if she fell on E.A.G., and that “the
brother said that the baby walked over there and I fell on top of him.”  When she fell, she testified, E.A.G. just
“went there where [she] was at.”  When
police officers arrived, she told them that she would take him to the hospital
“if” it was true that she had fallen on him. 
Though E.A.G. was ultimately discovered to have been injured, appellant
testified that she didn’t see any bruises and she didn’t believe that the child
had been hurt.  Furgason
testified that appellant’s apparent willingness to mitigate this incident
caused him concern about her parental abilities.

            The Department contends E.A.G. was
endangered by the history of domestic abuse between appellant and Felix G.  In advancing this argument, the Department
invokes the law of torts by analogizing to the theory of bystander recovery
through which plaintiffs who observe an accident involving a close relative may
recover mental anguish damages.  See Boyles v. Kerr, 855 S.W.2d 593,
597–98 (Tex. 1993)
(listing elements of a claim premised upon the bystander theory of recovery); see generally Dillon v. Legg, 441 P.2d
912, 920 (Cal. 1968)
(promulgating the bystander recovery factors later adopted by the Texas Supreme
Court).  The Department argues that if
courts allow bystanders to recover mental anguish damages after witnessing
shocking violence, then so too should courts infer that a child experiences
emotional trauma after witnessing bouts of domestic violence between
parents.         However, we need not resort to such an elasticized analogy to
conclude that violence between parents threatens the emotional welfare of a
child.  A wealth of Texas cases
directly address the issue.  Finders of
fact may consider alleged abuse of other relatives in considering whether a
parent’s conduct endangers other children. 
See Spangler v. Texas Dep’t of Protective & Regulatory Servs., 962 S.W.2d 253, 260 (Tex. App.—Waco 1998, no
pet.); In re B.R., 950 S.W.2d 113,
119 (Tex. App.—El Paso 1997, no writ); Director
of Dallas County Child Protective Servs. v. Bowling, 833
S.W.2d 730, 733 (Tex. App.—Dallas  1992,
no writ).  A parent’s abuse of a spouse
can suffice to support termination of the abuser’s parental rights.  See
Lucas v. Dep’t of Protective & Regulatory Servs.,
949 S.W.2d 500, 503 (Tex. App.—Waco 1997, pet. denied); In re B.J.B., 546 S.W.2d 674, 676 (Tex. Civ.
App.—Texarkana 1977, writ ref’d n.r.e.).  Thus, the trial court could consider the
history of abuse between the mother and the father for purposes of subsection
(E), even if the child was not always present.  See Spangler, 962 S.W.2d at
260; B.R., 950 S.W.2d at 119; but see Lane v. Jefferson County Child Welfare Unit, 564 S.W.2d 130, 132 (Tex. Civ.
App.—Beaumont 1978, writ ref’d n.r.e.)
(noting a child’s presence during the physical abuse of a parent or sibling is
necessary to endanger the child’s physical or emotional well-being).  Similarly, violent acts directed towards one
child can endanger other children not the direct victims of the physical abuse
in question.  See Lucas, 949 S.W.2d at
503; Bowling, 833 S.W.2d at 733.  It is self evident that parents perpetrating
violence towards certain members of the family threaten the emotional development
and well-being of any child.

            Though appellant notes that the
child was not present during previous arguments, we cannot condone a rule which
would require actual physical violence against the child in question before
endangerment may be ascertained.  We need
not await the occurrence of a tragic event before taking action in a
termination case.  Nor do we believe the
Department needed to wait idly for a direct catastrophic injury before
concluding that appellant posed a danger to her child.  Here, both parents admitted to an incident of
domestic abuse during which E.A.G. was injured. 
Both parents sought to conceal their history of domestic abuse, and the
trial court could consider that attempt to deceive as evidence of an
unwillingness to take responsibility and ensure the child’s future safety.  The domestic violence, coupled with the
refusal to be straightforward with the Department and the court regarding their
history of abuse, is evidence of an environment that threatens the child’s
physical and emotional well-being. 
Accordingly, we find appellant’s admitted history of domestic violence,
her misleading statements designed to mitigate that history of violence, the
injuries suffered by the child, and the continued threat of violence is
sufficient evidence of endangering conduct

            There is more than a scintilla of
evidence supporting the trial court’s conclusion that appellant’s conducted
endangered the physical and emotional well-being of the child.  Similarly, the evidence is such that the fact
finder could reasonably form a firm belief or conviction about the truth of the
State’s allegations.

IV.  The Best Interest of the Child

            Having found that the Department
established endangering conduct by clear and convincing evidence, we now
address the best interest of the child.  Tex. Fam. Code Ann.
§ 161.001(2) (Vernon
1996).  The supreme court has promulgated
the following non-exclusive list of factors that may be considered when
determining the best interest of the child:

(A) the
desires of the child; (B) the emotional and physical needs of the child now and
in the future; (C) the emotional and physical danger to the child now and in
the future; (D) the parental abilities of the individuals seeking custody;  (E) the programs available to assist these
individuals to promote the best interest of the child; (F) the plans for the
child by these individuals or by the agency seeking custody; (G) the stability
of the home or proposed placement; (H) the acts or omissions of the parent
which may indicate that the existing parent-child relationship is not a proper
one; and (I) any excuse for the acts or omissions of the parent.

Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex.
1976).  A fact finder is not required to
consider all of the listed factors.  Leal v. Texas Dep’t of Protective & Regulatory Servs., 25 S.W.3d 315, 322 (Tex.
App.—Austin 2000, no pet.).  Considering
the emotional and physical danger to the child, appellant’s plan for the child,
the stability of appellant’s home and lifestyle, and the appellant’s parental
acts and omissions, we find the Department met its burden to establish by clear
and convincing evidence that the termination of appellant’s parental rights was
in the best interest of the child.

A.  Emotional
and Physical Danger to the Child

            We begin by noting that the child’s
best interest are served by being free of an environment of domestic
violence.  The physical danger to E.A.G.
is well evidenced by the parents’ history of domestic violence as well as the specific
incident which brought about the Department’s involvement.  There was testimony that appellant herself
often instigated the violence in the home. 
Evidence of appellant’s misconduct, alleged to endanger the child’s
physical and emotional well-being, is also pertinent to and entwined in the
issue of the child’s best interest.  B.J.B., 546 S.W.2d at 677.  The history of violence, coupled with
appellant’s utter unwillingness to be forthcoming with the court, is to be
considered in weighing the best interest of the child.  Indeed, appellant’s testimony is riddled with
inaccuracies and misrepresentations.  She
claimed that she could not recall on what charge Felix G. was incarcerated,
though she did remember the exact number of days he served in jail.  When asked on cross examination if it concerned
her that she had no idea why the father of her child was in jail, she simply
replied, “What does that have to do with my baby?”  We find the foregoing to be persuasive
evidence that the emotional and physical needs of the child now and in the
future are served by the termination of appellant’s parental rights.

B.  The Plans
for the Child by Appellant

            The Department was rightly concerned
with the indefiniteness of appellant’s plan for the foreseeable future and her
failure to provide a stable and safe environment in the past.  See Horvatich, 78 S.W.3d at 601.  The trial court could also consider the
mother’s lack of steady employment in determining whether she had an emotional
weakness or instability.  See D.F. v. State, 525 S.W.2d 933, 940
(Tex. App.—Houston [1st Dist.] 1975, writ ref’d n.r.e.).  When asked
about her failure to obtain gainful employment, appellant simply replied that
no one was willing to hire her because she did not have an adequate
education.  Appellant admitted that she
was not working as of trial.  Though
required to do so by the plan, she refused to go to the recommended career
agency.  In fact, though required by the
plan to obtain either employment or her GED, appellant did not meet either
requirement.  She offered transparent excuses
for her lack of diligence, noting only that the agency was supposed to call her
back to inform her of its address but never did so.  Appellant testified that she did not take the
time to call the career agency again, nor did she make further inquiries to
locate the office.

            We do not find this to be a case
where economic status is invoked to justify termination.[4]  Rather, we are confronted with a mother whose
unemployment is prompted by a complete lack of motivation to further the goals
of the reunification plan.  Appellant’s
refusal to pursue employment opportunities with any diligence is evidence to be
considered in her ability to meet the requirements of the plan.  Thus, the trial court could have considered
the evidence of appellant’s plans for the child, or lack thereof, in finding
that the termination was in the best interest of the child.

C.  The
Stability of the Home

            Appellant admitted at trial that her
living arrangements did not provide a stable environment for E.A.G.  She lived in five different locations in the
span of a single year.  At the time of
trial, appellant lived with her aunt and six other individuals.  When asked during her testimony, appellant
could not even remember her own address. 
She also offered misleading testimony about her past living
arrangements.  She denied living in an
automobile, though Shumberg later contradicted this
testimony.  The need for permanence 

 class=Section3>

is the
paramount consideration for a child’s present and future physical and emotional
needs.  See Dupree v. Texas Dep’t of Protective & Regulatory Servs., 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no
writ); see also In re Brianna D., 798
A.2d 413, 415 (R.I. 2002) (“[T]he child’s interest in a permanent and stable
environment in which to grow is of paramount importance.”).  Indeed, the goal of establishing a stable,
permanent home for a child is a compelling interest of the government.  Hann v. Texas Dep’t. of Protective and Regulatory Servs., 969 S.W.2d 77, 83 (Tex. App.—El Paso 1998, pet.
denied).  Throughout her testimony,
appellant admitted she was not yet able to provide a stable environment for her
child and that she did not know when she would be able to do so.  She consistently stated that she was not yet
ready for the child to be returned to her. 
While parental rights are of constitutional magnitude, they are not
absolute.  C.H., 2001 WL 1903109, at *9. 
Just as it is imperative for courts to recognize the constitutional
underpinnings of the parent-child relationship, it is also essential that
emotional and physical interests of the child not be sacrificed merely to
preserve that right.  Id.  We believe
that there is clear and convincing evidence that appellant’s home remained
unstable and that the child’s best interest would be served by a more stable
environment.

D.  Appellant’s
Omissions as a Parent

            There is no indication that the
situation existing at the time the child was removed from custody had been
alleviated or that appellant was interested in making the permanent changes
necessary for her child to be returned. 
Evidence of the parent’s past behavior is indicative of the quality of
future care that parent is capable of providing.  Appellant was remiss in failing to attend
counseling sessions during the improvement period granted, and no adequate
excuse for failing to attend was advanced. 
Cf. In re P.S., 766 S.W.2d
833, 840 (Tex. App.—Houston [1st Dist.] 1989, no writ) (noting that parent’s
failure to achieve level of conduct specified in the parent-agency agreement standing alone did not justify termination);
In re M.H., 745 S.W.2d 424, 428 (Tex.
App.—Houston [14th Dist.] 1988, no writ) (noting that appellant consistently
missed follow-up sessions with children as well as therapy and her own
counseling sessions).  She had a year to
comply with the provisions of the plan and was consistently warned that a
failure to comply might result in termination. 
The threat of that drastic remedy failed to instill in appellant an
unabashed desire to comply and regain custody of her child.

            Though appellant initially took
steps toward completing the plan’s requirements, the trial court was entitled
to consider the inconsistencies in her testimony and the opinion testimony
given by the social workers who agreed that a continued relationship with
appellant was not in his best interest. 
The record fails to disclose that during an additional improvement
period the appellant would be any more diligent in pursuing the counseling,
classes, and employment she needed or that the grant of an additional
improvement period would materially alter the appellant’s motivation.  Accordingly, the trial court did not have to
accept as true the mother’s testimony of her future intentions or recent
alterations in lifestyle.  See In re E.S.M., 550 S.W.2d 749, 757
(Tex. Civ. App.—Houston [1st Dist.] 1977, writ ref’d n.r.e.).  The trial judge had an opportunity to view
appellant’s demeanor during the trial, to weigh her testimony, and to examine
her past deliberate conduct as a means of predicting her future behavior.  See
Moreland v. State, 531 S.W.2d 229, 235 (Tex. Civ.
App.—Houston [1st Dist.] 1975, no pet.). 
Thus, the trial court could have considered this evidence of appellant’s
omissions as a parent in determining the best interest of E.A.G.

V.  Conclusion

            We find more than a mere scintilla
of evidence supports the trial court’s conclusion that appellant’s conducted
endangered the physical and emotional well-being of the child and that the
termination was in the best interest of the child.  Likewise, the evidence is such that the fact
finder could reasonably form a firm belief or conviction about the truth of the
State’s allegations.

            Accordingly, we find the evidence
legally and factually sufficient and therefore affirm the judgment of the trial
court.

 

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Opinion filed November
 14, 2002.

Panel
consists of Justices Edelman, Seymore, and Guzman.

Do Not
Publish — Tex. R. App. P.
47.3(b).











            [1]  We refer to the child only by his initials
and the parents only by their first names and last initials so as to avoid the
use of proper names.  See Tex.
Fam. Code Ann. § 109.002(D) (Vernon 1996); see also S.V. v. R.V., 933 S.W.2d 1, 3 (Tex. 1996).





            [2]  In her brief, appellant couches her points of
error in terms of “no evidence” and “insufficient evidence.”  “No evidence” points of error raise questions
of law; they address the legal sufficiency of the evidence to support a trial
court’s findings.  See In re M.H., 745 S.W.2d 424, 427 (Tex.
App.—Houston [14th Dist.] 1988, no writ).





            [3]  Felix G. had a history of domestic abuse with
both his ex-wife and his ex-wife’s father. 
On several occasions, police were called out to that home.  He pled guilty to a family violence charge in
1997.





            [4]  Lurking beneath appellant’s argument is the
suspicion that the Department justifies the termination based upon appellant’s
poverty.  In her brief, appellant relies
in part upon the following passage:

 

In a
process in which stability, continuity, and permanence are made paramount,
there is a natural risk that subtle and improper prejudices may arise and
unfairly weigh the process against parents with fewer material resources.

 

In re C.H., 25 S.W.3d 38, 53 (Tex. App.—El
Paso 2000), rev’d,
45 Tex. Sup. Ct.
J. 1000, 2001 WL 1903109 (July 3,
 2002).  We do not find this
argument persuasive.  Courts have long
held that mere poverty of the parents is seldom, if ever, a sufficient ground
for depriving them of the natural right to the custody of their child or
children.  See Doyle v. Texas Dep’t of Protective and Regulatory Servs.,16
S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet. denied) (noting that showing of
poverty, standing alone, cannot demonstrate endangerment under the Family
Code).  We distinguish between the
unfortunate fact of a parent’s poverty and appellant’s case, which involves an
attitude of indifference towards providing a safe and stable environment for
her child.