# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00318-CV

**Silvia Martinez, Appellant**

**v.**

**Texas Department of Protective and Regulatory Services, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT NO. 198,572-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Silvia Martinez appeals from a decree terminating her parental rights to her two youngest children, C.T. and A.C. She concedes that the evidence supports a finding that she engaged in conduct or placed the children with others who engaged in conduct that endangered the children, but contends that the evidence is factually insufficient to support a finding that the termination was in the children's best interest. We affirm the trial court's decree of termination.

## Factual Background

Martinez has four children: J.G., who was thirteen at the time of trial, A.G., almost eleven, C.T., almost five, and A.C., about nine months old.[1] J.G. and A.G. have the same father,

---

[1] J.G. and A.G. were placed in the Dallas-Fort Worth area with their paternal grandmother.

who is in prison until 2010 for aggravated assault; C.T. and A.C. have different fathers, neither of whom could be located by the Department and whose parental rights were terminated by this proceeding. The Department first became involved with Martinez in 1994, when J.G. was four years old. After several referrals, the three older children were removed from her care in late 2001, after it was reported that she was neglecting them and using drugs.[2] During the Department's investigation, caseworkers learned that Martinez had abused A.G., and in February 2002, Martinez was placed on deferred adjudication for causing bodily injury to A.G. A.C. was born in July 2002, while Martinez was in jail on a drug charge, and was taken into Department custody and placed with her current foster family almost immediately. In October 2002, Martinez pleaded guilty to possession of cocaine and was placed on probation for five years and ordered into a Substance Abuse Felony Punishment Facility for one year; at trial, Martinez testified that she was to be released from the facility in early June 2003.

Since the children were removed, Martinez had seen A.C. and C.T. only three or four times, during supervised visitations arranged through the Department. C.T. had been in foster care since her removal when she was about three and one-half years old, and A.C. had been with the same foster parents virtually since birth. The Department planned to place C.T. with A.C.'s foster parents, who wished to adopt them both.[3]

---

[2] Since 1997, Martinez had used cocaine and marijuana and sniffed paint; she stopped for several years, but started again in late 2001 and used drugs while pregnant with A.C. She believed she could stay clean this time, saying, "Sir, I am looking at 15 years TDC if I mess up. I don't have a choice. I have to get it together."

[3] It is unclear if, at the time of trial, C.T. had yet been placed with A.C.'s foster parents. The record contains a Department progress plan prepared for the final hearing, which indicates that the Department was going to place C.T. with A.C.'s foster parents for a trial visit, to see if she could

Martinez testified that her brother, Martin Martinez, and his wife Dorinda wanted to take custody of A.C. and C.T. She said that Albert Martinez, another brother, had cared for the children for a short time but could not continue to do so due to his financial situation. Asked whether the Department had performed a home study for Martin, Martinez answered, "No, sir. The Judge had ordered a study to be done on my brother, but the CPS lady had told me that it would be worthless because I would pay that money, and then he being on probation would not—it wouldn't pass. So she doesn't see any reason why there should be a home study done on him." Martinez said her mother was supposed to have had a home study, but "the caseworker let her know that she had to have so much . . . money, she had to have insurance, she had to have a seven-bedroom house, which that was told to myself also, and that she doesn't see it fit for my mother to have the children."

Bonnie Wilson, the Department caseworker for the children, testified that she had done a home study for the older children's paternal grandmother and had approved that placement. She testified that A.C. and C.T. were adoptable and that A.C.'s foster parents, who had been approved by the Department, were interested in adopting them both. Wilson said she spoke to Martinez's mother early in the case about doing a home study and placing the children with her. Wilson requested information from Martinez's mother, left phone messages, and sent a certified letter that was accepted, but Martinez's mother never contacted Wilson until about two weeks before trial.

Wilson said a home study had not been done on Martin and Dorinda Martinez, due at least in part to apparent misunderstandings. Wilson said Martin Martinez never contacted her

adapt to that home, and some of the testimony demonstrates that C.T. may have been living with A.C.'s foster parents by the time the hearing was convened.

except for asking in October 2002 whether Martinez's son could be placed with him and his wife. Martin told Wilson that he was on probation for family violence, but when Wilson ran a background check, she found an extensive criminal history, as well as a history of his returning Martinez's children to her after they were placed with him by the Department under a safety plan. She said that after she found out about Martin's assault probation[4] and that he had returned the children to Martinez "even though we've asked him to voluntarily place them for a while," she told Martin that he could pay for a home study, but that the Department "wouldn't be able to recommend placement." She did not suggest that a home study would be a waste of time.

Wilson believed Martin would give the children back to Martinez upon her release from the drug rehabilitation program and that he was therefore not an appropriate placement for C.T. and A.C. Wilson believed it was in A.C. and C.T.'s best interest for Martinez's parental rights to be terminated and for them to be adopted together. Asked about the placement of J.G. and A.G. with their grandmother, Wilson said that the older children have "a huge family support system in . . . the Dallas-Fort Worth area," and that termination therefore was not in their best interest.

Martin Martinez was forty years old at the time of trial and had a landscaping business. He testified that he was placed on probation several years before trial for assaulting his ex-wife. He had four more years of probation and testified that he is complying with all the

---

[4] Wilson referred to Martin's probation as being for aggravated assault, but Martin testified that it was for assault against a family member and not aggravated assault. Unless a person has previously been convicted of assaulting a family member, assault against a family member is a misdemeanor offense, *see* Tex. Pen. Code Ann. § 22.01(b) (West Supp. 2004), whereas aggravated assault is a felony offense. *See id.* § 22.02(b) (West Supp. 2004). Wilson's report states that Martin's record showed "many entries of aggravated assault." Wilson said those records were in the file, but she acknowledged that there was no evidence before the trial court to support that allegation.

probation requirements, including random drug testing. He said that before being placed on probation, his last encounter with law enforcement was in 1980. He is living in Martinez's house, making the payments, and maintaining the house. Martin testified that he loved Martinez's children and was very involved in the three oldest children's lives. He said he could support A.C. and C.T. financially if they came to live with him, his house was large enough for the children to live there, and he would abide by any restrictions placed on him by the Department. Martin felt it was important for all four children to maintain contact with each other.

Martin testified that Bonnie Wilson came to his house once to speak to him about placing the children there, but since that meeting he had not heard from her. Martin said he was willing to pay $500 for a home study, but Wilson never told him when to pay the fee. He had not contacted anyone else with the Department and he had not attended other court hearings about the children. Martin knew Martinez had smoked marijuana on occasion during the last six years, but did not know she was using other drugs; he testified that had he known, he would have first tried to get her help and then taken her children to live with him. Martin testified that he does not use drugs of any kind or drink alcohol to excess. Martin testified that Martinez had placed the children with him on and off during 2001 and that he returned the children because he was not aware of any contrary order or Department directive.

The guardian ad litem appointed to represent the children recommended that J.G. and A.G. be placed with their paternal grandmother. He recommended that Martinez's rights to the younger two children be terminated because she was continuing to struggle with her addictions and had not shown any improvement in parenting skills since November 2001. A.C.'s foster parents

5

wished to adopt her and C.T. and were not opposed to their maintaining a relationship with their older siblings. The children's attorney ad litem also agreed with the Department's recommendations. He noted Martin's desire to care for the younger children, but said, "I would have hoped that he would have come forward six months ago or a year ago and we wouldn't have to be having this conversation." The attorney ad litem acknowledged that Martin may not understand how the system works and could be an appropriate placement, but agreed with the Department's recommendation that the older two children be placed with their paternal grandmother and that Martinez's rights to the younger children be terminated.

The trial court agreed with the Department's recommendations, noting that the trial was the court's eleventh hearing regarding the children. The court said that although it agreed with the attorney ad litem's description of Martin, Martin had only attempted to come to one other hearing, which was reset for a later date. The court stated, "That leaves 10 other hearings starting in December of 2001 that he could have come to and expressed some interest somewhere along the way to this Court who ultimately makes the decision." The court also observed that the three children had been placed with Albert and that had the rest of Martinez's family stepped in to help Albert care for the children, "we would not be here today."

**Standard of Review**

A person's parental rights may be terminated only if the trial court finds (1) that the parent has engaged in conduct set out as statutory grounds for termination, and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001 (West 2002); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). The Department of Protective and Regulatory Services must prove those

6

required elements by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001; *C.H.*, 89 S.W.3d at 23. Clear and convincing evidence is an intermediate standard of proof that falls between the criminal standard of proof beyond a reasonable doubt and the civil standard of a preponderance of the evidence. *C.H.*, 89 S.W.3d at 23-25. Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations" supporting termination. *Id.* at 23 (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)). We review the factual sufficiency of the evidence by viewing all of the evidence and determining whether a reasonable fact-finder could have resolved disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). If the disputed evidence is such that a reasonable fact-finder could have formed a firm belief as to the truth of the State's allegations, the evidence is factually sufficient. *Id.*; *C.H.*, 89 S.W.3d at 25. We must maintain appropriate deference to the fact-finder's role by assuming that it resolved evidentiary conflicts in favor of its finding when reasonable to do so and by disregarding evidence that it could have disbelieved. *J.F.C.*, 96 S.W.3d at 266-67.

Some of the factors to consider in determining a child's best interests are: the child's wishes; her emotional and physical needs now and in the future; emotional or physical danger to the child now and in the future; the parenting abilities of the parties seeking custody; programs available to help those parties; plans for the child by the parties seeking custody; the stability of the proposed placement; the parent's conduct indicating that the parent-child relationship is improper; and any excuses for the parent's conduct. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). Permanence is of paramount importance in considering a child's present and future emotional and physical needs. *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied); *In re M.A.N.M.*, 75

7

S.W.3d 73, 77 (Tex. App.—San Antonio 2002, no pet.); *Salas v. Texas Dep't of Protective & Regulatory Servs.*, 71 S.W.3d 783, 792 (Tex. App.—El Paso 2002, no pet.); *see Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502, 513 (1982) (children need stable, long-term relationships with caretakers). A fact-finder may consider the possible consequences of a decision not to terminate and may compare the parent's and the Department's plans for a child. *D.O. v. Texas Dep't of Human Servs.*, 851 S.W.2d 351, 358 (Tex. App.—Austin 1993, no writ).

A parent's statutorily offensive conduct is often intertwined with the best interest determination. *Horvatich v. Texas Dep't of Protective & Regulatory Servs.*, 78 S.W.3d 594, 601 (Tex. App.—Austin 2002, no pet.); *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). Although there are cases in which the parent's behavior alone will demand termination, generally "the best interest determination must have a firm basis in facts standing apart from the offending behavior." *D.M.*, 58 S.W.3d at 814; *see Horvatich*, 78 S.W.3d at 601. The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the fact-finder from finding by clear and convincing evidence that termination is in a child's best interest, especially when there is undisputed evidence that the parental relationship endangered the child. *C.H.*, 89 S.W.3d at 27. No one factor is controlling, and the facts of a case may mean that evidence of one factor is sufficient to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.).

## Discussion

Martinez argues that the trial court erred because the same circumstances and facts applied to both the older children, with whom she maintains her parental relationship, and the

8

younger children, with whom her relationship was terminated. Martinez is correct that the same conduct was used to support a finding in favor of termination for A.C. and C.T. but not for J.G. and A.G. However, Martinez's conduct, which she concedes falls within the statutory grounds for termination, is a separate issue from the children's best interests. To terminate Martinez's parental rights, the trial court had to find both that she committed conduct fitting the statutory grounds for termination, conduct she admits and which would have supported termination of all four children, *and* that termination was in the children's best interest. Tex. Fam. Code Ann. § 161.001; *C.H.*, 89 S.W.3d at 23. The trial court found that termination was in the best interest of the two younger children, but not in the best interest of J.G. and A.G., the older children.

There are significant differences between the older children's situation and that of the younger children. At the time of trial, the older children were about thirteen and eleven years old, living with their paternal grandmother for whom a home study had been conducted and approved, had a large and close-knit support system in their paternal family in the Dallas-Fort Worth area, and were old enough to know those family members and have built relationships with them. The younger children were almost five years and one year old. C.T. had been in foster care since she was three, and A.C. had been with her foster parents almost since birth. Those foster parents wanted to and were approved to adopt both children together. Martin Martinez also expressed an interest in taking custody of the children, but he had not taken steps to get approved by the Department, had a history of taking custody of the children and then returning them to Martinez without Department approval, and was on probation for assaulting his ex-wife. Further, until shortly before trial, the Department was under the impression that Martin was interested in caring only for J.G., Martinez's

9

son, not the younger girls. According to Wilson, Martinez's mother did not get back in touch with the Department until shortly before trial, and other concerns weighed against placement of the younger children with her.

Martinez's history of drug use, neglect, and abuse weighs in favor of termination, as does the fact that the children have been placed together in a stable home with foster parents who wish to adopt them and give them the permanence they need. The Department was involved in Martinez's life for several years before the children were removed, giving her opportunities to get her life in order and improve her parenting skills, but she continued to neglect her children and use drugs. The children are too young to express a preference, but the evidence is clear that Martinez did not properly provide for their emotional and physical needs in the past and that her behavior put them in emotional and physical danger. The record shows that the foster parents are providing for their needs and keeping them safe and are open to allowing the children to maintain a relationship with their siblings. *See Holley*, 544 S.W.2d at 372.

Although there is a general preference for keeping a parent-child relationship intact, *see Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985), and placing children with family members, *see Horvatich*, 78 S.W.3d at 603, the legislature has not required that the Department, in addition to proving that termination is warranted by the parent's conduct and the child's best interest, also prove that termination is the only option available for the child's placement. *See D.M.*, 58 S.W.3d at 818 (Dauphinot, J., concurring). The Department and its caseworkers are tasked with taking into account all options, including available, appropriate, and interested family placements, when deciding how

best to protect a child's best interest.  The record demonstrates that the Department considered all options in this instance.

## Conclusion

The Department proved by clear and convincing evidence that termination was in the younger children's best interest.  We affirm the trial court's decree terminating Martinez's parental relationship with her two youngest children.

 

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   May 20, 2004

11