# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00248-CV

**Sarah Horvatich, Appellant**

**v.**

**Texas Department of Protective and Regulatory Services, Appellee**

### FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY
### NO. 99-5442, HONORABLE M. BENTON ESKEW, JUDGE PRESIDING

Sarah Horvatich appeals a decree of termination of her parental rights to her three children, G.H., J.H., and S.H. The Texas Department of Protective and Regulatory Services (the Department) filed an original petition for protection, conservatorship, and termination in a suit affecting the parent-child relationship. *See* Tex. Fam. Code Ann. '' 101.032, 161.001 (West 1996 & Supp. 2002). The Department sought to terminate the parental rights of Ms. Horvatich, Matthew Horvatich, father of J.H. and S.H., and Larry Strifely, father of G.H. After a one-day trial to the bench, the court ordered termination of all three parents= rights. Ms. Horvatich alone appeals the order, challenging the sufficiency of the evidence to support the decree of termination. We hold that the record contains factually insufficient evidence that termination of her parental rights is in the best interest of the children and accordingly reverse and remand this cause for a new trial.

*Termination of Parental Rights*

Section 161.001 sets out a two-pronged test for involuntary termination of the parent-child relationship. *Id.* ' 161.001 (West Supp. 2002). The trial court must find, by clear and convincing evidence, that the parent has engaged in one of the grounds for termination and that termination is in the best interest of the child. *Id.*; *Leal v. Texas Dep=t of Protective & Regulatory Servs.*, 25 S.W.3d 315, 318 (Tex. App.CAustin 2000, no pet.). Proof of one does not relieve the petitioner from establishing the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). Parents= rights to Athe companionship, care, custody and management@ of their children are protected to the degree that they are of Afederal constitutional dimensions.@ *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982); *In re D.T.*, 34 S.W.3d 625, 629 (Tex. App.CFort Worth 2000, pet. denied). In a termination case, the State seeks not merely to limit those rights but to end them finally and irrevocablyCto divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child=s right to inherit. Tex. Fam. Code Ann. ' 161.206(b) (1996); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

Because termination of parental rights is such a drastic act, due process requires that the petitioner justify termination by a heightened burden of proof. *Leal*, 25 S.W.3d at 318-19; *In re D.T.*, 34 S.W.3d 625, 630; *see also In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.CTexarkana 1995, writ denied) (clear and convincing evidence is constitutionally and statutorily required in termination proceeding). Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the proposition sought to be established. *Leal*, 25 S.W.3d at 319. The clear and convincing standard creates a higher burden to fulfill because of the severity and permanency

of the termination of the parent and child relationship. *In re D.T.*, 34 S.W.3d at 630. This Court strictly scrutinizes termination proceedings and strictly construes involuntary termination statutes in favor of preserving the parent-child relationship. *Id.*

### Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury=s answers and are reviewable for legal and factual sufficiency of the evidence by the same standards. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When a complete reporter=s record is part of the record on appeal, as in the instant case, the court=s findings of fact are not conclusive. *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987).

We review the legal sufficiency of the evidence by considering all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party=s favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998). We will uphold a finding if it is supported by more than a scintilla of evidence. *Leal*, 25 S.W.3d at 321. In reviewing factual sufficiency, we view all of the evidence in a neutral light and set aside a judgment only if the evidence supporting it is so weak or contrary to the weight of the evidence as to be clearly wrong and unjust. *Id.*; *D.O. v. Texas Dep=t of Human Servs.*, 851 S.W.2d 351, 353 (Tex. App.CAustin 1993, no writ). The heightened standard of proof does not change the standards by which an appellate court reviews the sufficiency of the evidence. *Leal*, 25 S.W.3d at 320. But our sufficiency review in a termination case necessarily incorporates whether the challenged finding has been proven by clear and convincing evidence. *Id.*

As Ms. Horvatich has attacked the legal and factual sufficiency of the evidence, we will discuss the events surrounding the decision to terminate.

*Summary of the Evidence*

Appellant married Matthew Horvatich in 1996 but was separated from him at the time of trial. The Department first became involved with the family in 1997, when the Horvatiches were living in Port Arthur with G.H. and J.H. G.H., who was three years old at the time, was seen trying to cross the road by himself. The Department was contacted and the Horvatiches agreed to a child safety plan designed to prevent future similar occurrences. Specifically, they agreed in writing that they would supervise the children at all times or arrange for an appropriate caregiver.

The Horvatiches later moved to Smithville. Ms. Horvatich admitted that she and her husband smoked marihuana and that sometimes the children were present but they were always in a separate room or outside when this occurred. In November 1998, S.H. was born and the Department was again contacted because Ms. Horvatich tested positive for marihuana at the baby=s birth; the drug was not present in S.H. After testing positive for marihuana use, Ms. Horvatich was assigned a family preservation workup by the Department, which made several recommendations for the family. In March 1999, a Department caseworker made an unannounced visit to the home and found S.H., who was then five and a half months old, alone in a swing. Ms. Horvatich had left the child unattended while she went to a neighbor=s house to use the phone. Because S.H. was asleep, Ms. Horvatich did not want to wake him, and so left him unattended. She thought that she had left S.H. alone for about twenty minutes; the caseworker testified that her notes from the incident documented that the baby had been left alone for about

**4**

forty minutes. While the caseworker was at the home, a sheriff=s deputy came by to talk to appellant about leaving the children unsupervised and a truancy officer also arrived to speak to Ms. Horvatich about the need to be present when the oldest child came home from school on the bus. On two different occasions, the Horvatiches had failed to meet the school bus; twice, the bus driver had to return to the school with G.H. on board.

After this incident, Ms.Horvatich again agreed in writing that she would not leave her children unattended. But only a month later, Ms. Horvatich again left one of the children at home alone while she drove from her home to Round Rock to pay the electricity bill. Ms. Horvatich testified that she thought G.H. was in the car, asleep under a blanket, and that when she realized he was not with her, she immediately went to the Round Rock police department. At the station however, she told the police officers that G.H. was with her while she drove to Round Rock but that she let him get out of the car to use the restroom at a convenience store in Austin; she stated that while she thought that G.H. got back in the car, she must have left him at the store. The Round Rock police officers soon determined that G.H. was not in Austin or in Round Rock but in Smithville near the Horvatich home. Neighbors had seen G.H. walking down the road by himself without any clothes on twice that same day.

After this incident, the children were taken into the Department=s custody in late April 1999. In August or September, the Horvatiches separated, and she went to Dallas to live with her brother. She testified that when the Department removed her children, she lost all hope and began Aa steady slide downhill@ and Agot into drugs pretty bad.@ The Department disputed her account that her drug use began after the children were removed; Ms. Horvatich admitted that she and her husband used cocaine

**5**

occasionally during 1998. After August 1999, Ms. Horvatich Adisappeared@ for several months, and neither her family nor the Department knew her whereabouts. She eventually was arrested for possession of cocaine and at the time of this trial was on probation as an inpatient at a drug-treatment facility in Dallas. She attended the trial, which was held in February 2001, and admitted that she had not contacted her children during the approximately eighteen intervening months. She stated, however, that she spoke with her mother about the children shortly before she entered treatment and that while she had not spoken with her caseworker since August 1999, she had written a letter to the Department describing where she could be reached.[1] She also stated that she had been in touch with her attorney during this time. She described her treatment as an intensive, 180-day in-patient treatment program that was Alike[] about two years= worth of treatment bundled up in about six months.@ As part of the treatment, she was learning to modify her behavior and deal with her addiction, and she would receive employment assistance.

---

[1] Pursuant to the temporary orders entered in the case prior to the termination proceeding, Ms. Horvatich was required to notify the Department of her current address. The Department acknowledged that Ms. Horvatich wrote a letter, but pointed out that she had sent it to the Dallas agency instead of the Bastrop agency where her children were located.

The program in Dallas seemed to afford Ms. Horvatich the opportunity to fulfill many of the requirements set out in the temporary orders that were entered in Bastrop when the Department moved for temporary managing conservatorship of the children. On cross-examination, she testified that she received individual counseling once a week as part of her treatment and had completed parenting classes, pre-employment competency classes, and job training. She also testified that she attended drug and alcohol meetings every night and underwent random urinalysis at the facility, both of which were requirements of the Department.[2] She acknowledged that she had failed to make the monthly child support payments required by the orders, but that she had been unemployed since the children were removed from the home.

Ms. Horvatich testified that she had refused the option to voluntarily relinquish her parental rights because she believed her children would be happier and healthier if they lived with her or a family member. She stated that she loved her children, would be better able to parent the children as a result of her treatment, and would be grateful if the Department gave her the opportunity to complete the remaining requirements so that she could be reunited with her children. She testified that when her treatment ended in two months, she planned to live in a halfway house in Dallas with other recovering addicts for six months and then possibly stay with her mother.

The Department next called Laura Ketchersid, the family=s former caseworker. Because her involvement with the family ceased when the children were removed in April 1999, Ms. Ketchersid was only able to testify about the events that led up to the Department=s decision to remove the children. The

---

[2] We note that the day of trial was the first time the Department learned of Ms. Horvatich=s progress regarding the counseling sessions, parenting classes, and drug and alcohol sessions.

Department next called Stephanie Hofferek, who was assigned to be the conservatorship worker on the case involving G.H., J.H., and S.H. Her participation in the case ended in April 2000, ten months prior to the trial in February 2001. Ms. Hofferek testified concerning the physical condition of the children at the time of removal in April 1999. She stated that G.H. had severe tooth decay, J.H. had a bald spot on his head as the result of a severe case of head lice, and S.H. had an upper respiratory infection. She gave no testimony about the children after their initial removal.

Ms. Hofferek also testified regarding attempts made by the Department to place the children with relatives. The only potentially viable relative placement was with the children=s maternal grandmother, Debra Pimental. Ms. Hofferek testified that after the Department conducted a home study, it recommended that Ms. Pimental and her fiancé attend family counseling and parenting sessions. It also recommended that Ms. Pimental have regular visits with the children. On cross-examination, Ms. Hofferek confirmed that Ms. Pimental had visited the children and attended the required family counseling although her attendance was inconsistent. Ms. Hofferek also stated that because she had not been involved in the case since April 2000, she had no personal knowledge about Ms. Pimental=s progress. Ms. Hofferek maintained that while she did not know what the Department=s specific recommendations for Ms. Pimental had been, she did not think that Ms. Pimental had made consistent progress in following through with them.

The Department next attempted to call Donna Wolf and Jill Kammerdiener. Ms. Kammerdiener was the current caseworker assigned to the case. As the Department had failed to designate either witness, however, the trial court refused to allow them to testify. The Department then rested its case in chief, without having provided any testimony regarding the condition of the children for at

**8**

least ten months preceding trial, how they were doing in foster care, whether they were being considered for adoption, the Department=s plan for the children, including whether the Department would attempt to place the three siblings together, or why the Department had decided against placement with the children=s maternal grandmother.

During her case-in-chief, Ms. Horvatich=s attorney called Ms. Pimental, who testified that she had expressed to the Department that she wished to have custody of her three grandchildren. At the Department=s request, Ms. Pimental had completed parenting classes, and both she and her fiancé had made significant progress with family counseling and were scheduled to attend two additional sessions; the Department, however, had never contacted her again to discuss her progress or plans for placement of the children with her. When Ms. Horvatich=s counsel attempted to question Ms. Pimental regarding conservatorship of the children, the Department=s attorney objected on the ground that the questioning was irrelevant because, in the Department=s view, termination was the only issue before the court.

After hearing all of the testimony, the trial court asked for the opinion of the children=s guardian ad litem, a CASA representative, who gave an unsworn statement that Athe parental rights to these children [should] be terminated so that these children can go on to a stable life.@ The trial court also heard argument but no evidence from the children=s attorney ad litem Richard Moore, who voiced his doubts that the Department had demonstrated by clear and convincing evidence that termination was in the best interest of the children. Despite the doubts of the attorney ad litem, and based on almost no evidence regarding the children=s best interests, the trial court nonetheless terminated Ms. Horvatich=s parental rights. On appeal,

Ms. Horvatich challenges the legal and factual sufficiency of the evidence to support the holding that termination was in the best interests of G.H., J.H., and S.H.

**DISCUSSION**

There is a strong presumption that the best interest of a child is served by keeping custody in the natural parent. *In re D.T.*, 34 S.W.3d at 641. Some of the common factors that courts use to evaluate the best interests of a child include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *Leal*, 25 S.W.3d at 321. This list of relevant considerations is not exhaustive; other factors may be considered when appropriate. *Holley*, 544 S.W.2d at 372; *Leal*, 25 S.W.3d at 322. Likewise, a fact finder is not required to consider all of the listed factors. *Leal*, 25 S.W.3d at 322.

The trial court entered findings of fact and conclusions of law. Most of the findings of fact detail the evidence that supported the court=s finding that Ms. Horvatich had engaged in conduct prohibited by section 161.001(1). The court also made findings of fact that Ms. Horvatich had not demonstrated good parenting abilities or the ability to provide a safe and stable home environment for her children, and that her

10

acts or omissions demonstrated that the existing parent-child relationship was improper. The court made

only one finding that touches on the best interest of the children, which states:

> All reasonable efforts, consistent with time and circumstances and pursuant to 42 U.S.C. 671(1)(15) and 672(a)(1) have been made by the Texas Department of Protective and Regulatory Services to prevent or eliminate the need for removal of the children from the home and to make it possible for the children to return home, but it is not in the children=s welfare to remain at home.[3]

The trial court=s finding, however, does not describe any efforts made by the Department, nor are there any

other findings regarding the current conditions or future plans concerning the children. Our review of the

record discloses little evidence of any of these matters.

Under the Family Code, a trial court may only order termination of parental rights if, based

on clear and convincing evidence, termination is in the best interest of the children. The record in this case,

however, does not contain evidence that would even meet the lesser standard of preponderance of the

evidence in favor of a finding that termination is in the children=s best interest. *See Leal*, 25 S.W.3d at 319

(clear and convincing is intermediate standard between lesser burden of preponderance of the evidence and

greater standard of proof beyond a reasonable doubt required in criminal proceedings). The Department

insists that the evidence indicating Ms. Horvatich=s poor parenting skills and her neglect of the children while

in her care demonstrate that termination of her parental rights is in the best interest of the children. While

this evidence overlaps with that needed to establish statutory grounds for termination, it is also relevant in

---

[3] The wording of this finding of fact is virtually identical to the Department=s assertion in its original petition for termination in a suit affecting the parent-child relationship.

considering the best interest of the child. *See Holley*, 544 S.W.2d at 372; *Leal*, 25 S.W.3d at 321. However, it is only one of several relevant factors to consider. More fundamentally, though, the Department=s burden at trial was not simply to prove that termination was justified based on Ms. Horvatich=s actions, but also to affirmatively establish, by clear and convincing evidence, that termination was in the best interest of the children. *See* Tex. Fam. Code Ann. ' 161.001; *In re R.D.*, 955 S.W.2d 364, 368 (Tex. App.CSan Antonio 1997, pet. denied). The focus in involuntary termination cases, then, is on the welfare of the children.

The Department also asserts that the fact that Ms. Horvatich lacked definite plans for the future is evidence that termination was in the best interest of the children. Ms. Horvatich testified that when she completed the treatment program, she would still be on probation for another four and a half years in Dallas county. She stated that she would stay in a halfway house for six months and then Apossibly move to where my mother stays orCthat=s the plan for right now.@ The Department rightly had concerns regarding the indefiniteness of Ms. Horvatich=s plan for the foreseeable future and her failure to provide a stable and safe environment in the past. But more troubling for this Court is the Department=s failure to present evidence concerning the children while in foster care as well as *its* future plans for G.H., J.H., and S.H. *See Holley*, 544 S.W.2d at 372 (stating that movant=s plans for child is a factor to consider when weighing the best interest of the child). The evidence that indicates Ms. Horvatich=s lack of permanent stability for the future and her poor parenting skills in the past does amount to *some* evidence that termination may be in the best interest of these children. *See In re D.T.*, 34 S.W.3d at 641-42. Viewing the evidence in the light most favorable to the judgment, there is legally sufficient evidence that the best interest of G.H., J.H., and

**12**

S.H. would be served by termination of Ms. Horvatich=s parental rights. Ms. Horvatich asserts, however, that the evidence is so weak as to be factually insufficient that termination is in the best interest of her children. We agree.

As the summary of the evidence indicates, there was no testimony from any witness with personal knowledge of the current well-being of the children. The tender ages of the children made it impossible for G.H., J.H., and S.H. to express their desires, but the Department presented no witness to testify as to the physical, mental, and emotional states of the children. The current caseworker, who was the one person who would have been able to give information regarding the children=s well-being, was not allowed to testify because the Department failed to timely designate her as a witness. Therefore, the record contains no testimony regarding how the children were doing in foster care, whether the children were being considered for adoption or the likelihood of their being adopted, or any testimony from anyone who had personal knowledge of the children at the time of trial.

Furthermore, there was no evidence concerning the Department=s plan for placement of the children and whether they are currently placed together in foster care or what their future might hold. The Department offered no insight into whether, once the mother=s rights were terminated, it would attempt to place all three children together. There was no testimony regarding the opportunity for adoption of the children. Unlike some termination proceedings that involve infants, this proceeding involved six, four, and two year-old siblings. It is more difficult both to place older children and to keep three siblings together. As the Department offered no evidence regarding its plan for placement of the children, it is as likely as not

that the children will remain in long-term foster care or even be separated if Ms. Horvatich=s rights are terminated. This likelihood weighs strongly against a finding that termination is in the children=s best interest.

The record contains only scant evidence regarding the Department=s attempts to reunite the children with their mother. There was evidence that Ms. Horvatich was not in contact with the agency or her family for months after August of 1999. But there was no evidence of the Department=s attempts to contact Ms. Horvatich or evaluate her current parental abilities. Ms. Hofferek testified that when the children were removed from the home, Ms. Horvatich submitted to a psychological examination and drug and alcohol assessments, and initially had visits with the children until the Department reduced visitation. Ms. Horvatich testified that she began to lose hope that she would ever be reunited with the children. She testified that she was Abasically told that there was no hope of ever getting my kids back,@ and that it was Aput to me like I would have to commit a miracle to get my children back.@ Although the Department=s witness disputed Ms. Horvatich=s account, the evidence in the record at least suggests that the Department did not adequately consider reunification or placement with relatives as viable alternatives to termination.

According to Ms. Hofferek=s testimony, the Department initially considered reunification, noting several strengths about the Horvatich family.[4] Ms. Hofferek testified that her initial impressions were that Athe family has extensive family support,@ the Afather has a full-time job,@ Athe parents are very bonded to the children, as well as the children to their parents,@ Athey have been cooperative with the Department and are willing to make changes and are open to ideas which are offered to them.@ In addition, Mr. and

---

[4] The original petition filed by the Department seeking temporary custody states that the ADepartment will make reasonable efforts to eliminate the need for the children=s removal and to enable the return of the children to the parent=s [sic].@

**14**

Ms. Horvatich complied with the Department=s recommendations for reunification immediately after the children were removed from the home; after a few months time, however, the parents= involvement began to wane.[5] By the time of trial, the Department had firmly taken the position that termination was in the children=s best interest, as evidenced by the Department=s objections to testimony concerning the maternal grandmother=s circumstances, asserting that any such testimony was Airrelevant@ to the termination issue.

Ms. Hofferek testified that Ms. Horvatich failed to maintain regular contact with the Department and had no contact with her children for eighteen months. But at the time of trial, Ms. Horvatich had complied with many of the Department=s prerequisites for reunification. Ms. Hofferek testified that the Department recommended a psychological evaluation, parenting classes, visits, individual counseling, drug and alcohol assessments, and child support payments. With the exception of child support payments, Ms. Horvatich had substantially complied with all of these requirements through her treatment program. The Department had no knowledge of Ms. Horvatich=s progress and no caseworker was able to testify as to any efforts to communicate with her or investigate her current situation. Ms. Horvatich provided documentation at trial detailing her successful completion of employment classes and a family strengthening program, as well as monthly progress reports covering several months that indicated her progress in

---

[5] Indeed, approximately six months after the temporary orders were issued, the court found that the children=s parents were not Awilling [or] able to provide the children with a safe environment and; therefore, return of the children to a parent or other person or entity is not in the children=s best interest.@ The court therefore, ordered that the Department have continued custody of the children until the next scheduled hearing.

treatment and negative drug test results. At oral argument, the Department acknowledged that the case should have been tried differently but explained that the Department was facing its one-year deadline to bring termination proceedings. The Department is not free, however, to ignore highly probative evidence just to meet the statute of limitations. On remand, the Department can fully consider Ms. Horvatich=s progress and take into account her efforts in meeting its requirements for family reunification and any relevant changes in circumstances due to Ms. Horvatich=s separation from her husband. Finally, the passage of time may have afforded Ms. Horvatich the opportunity to develop her parenting skills, establish a more stable living situation, and find employment; she may also have more support from her family. In any event, the Department should take any such changes into account on remand.

The Department should also consider the alternative placement with the children=s maternal grandmother. At trial, the Department offered no testimony regarding the children=s relationship with their grandmother or whether they were bonded with her, even though Ms. Pimental desired custody of the children and the Department had considered placing the children with her. Although apparently Ms. Pimental and her fiancé had followed through with the recommendations concerning family strengthening and visitation with the children, presumably the Department rejected placement with Ms. Pimental as a viable alternative to termination. The Department offered no explanation at trial for its decision other than a suggestion by Ms. Hofferek that Ms. Pimental had not been Aconsistent@ in following through with the counseling. When pressed, however, Ms. Hofferek admitted that she had no way of knowing whether Ms. Pimental had been consistent or inconsistent because the witness had not been involved in the case for ten months. Either the Department never seriously considered placement of the children with their grandmother

**16**

and her efforts to prepare for that possibility were futile, or the Department considered the option at one time but then, without explanation, abandoned the idea. Either way, the scant evidence does not support a decision that termination would be better for the children than would placement with a viable relative.

In a termination of the parent-child relationship, it is certainly in the best interest of the children that the Department attempt to place children with a relative if possible, especially if that alternative allows all three siblings to continue in a family unit, rather than remain perpetually in foster care or be separated for adoption. Indeed, the Department originally requested that the court appoint the Department as sole managing conservator only if the children could not be permanently placed with one of their relatives. When this case is better developed concerning the current circumstances of the children, the mother and any other viable family members, and all witnesses with knowledge of relevant facts are able to testify, the court may more adequately consider the termination of Ms. Horvatich=s parental rights versus the other alternatives available to provide for the safety and stability of these children. Based upon a review of this record, however, we hold that the evidence supporting termination is so weak and contrary to the weight of the evidence as to be clearly wrong and unjust. Therefore, the evidence is factually insufficient to establish by clear and convincing evidence that termination is in the best interest of these three siblings.[6]

### CONCLUSION

Having sustained Ms. Horvatich=s second issue, we reverse the judgment and remand the cause for a new trial on all issues.

---

[6] Having found that the evidence is insufficient that termination is in the best interest of the children, section 161.001(2), we need not discuss the issues raised by Ms. Horvatich regarding the sufficiency of the

**17**

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Reversed and Remanded

Filed:   May 16, 2002

Publish

---

evidence to support the statutory grounds for termination, section 161.001(1).