NO. 07-05-0433-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



JULY 3, 2007


______________________________



JERRY DALE MORGAN, APPELLANT



V.



TEXAS DEPARTMENT OF PUBLIC SAFETY, APPELLEE


_________________________________



FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;



NO. 05-07-20083; HONORABLE HAROLD PHELAN, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ. 

 MEMORANDUM OPINION

 Appellant Jerry Dale Morgan appeals the district court's judgment affirming the
suspension of his driver's license by the Texas Department of Public Safety. We will affirm
the district court.

 The events leading to the suspension were largely undisputed. Trooper Jose
Barrientes was notified of a one-vehicle accident in the parking lot of a liquor store in
Hockley County, Texas. The manager of the liquor store reported that a white Dodge
pickup struck a pole in the parking lot. The manager indicated he spoke to the driver, the
driver appeared to be intoxicated, and the driver left the scene. Approximately twenty
minutes later, a vehicle matching the description provided by the manager (1) was located at
a residence in Levelland, Texas. 

 The truck was parked, unoccupied, and Trooper Barrientes saw damage to its front
that was consistent with striking a fixed object. Barrientes noted that the engine
compartment was warm. Morgan, who was inside the residence, affirmed the vehicle was
his. 

 While speaking with Morgan, Barrientes detected the odor of alcohol. Morgan's
eyes were red and glassy and his speech was slurred. The trooper noted Morgan was
unsteady on his feet. Morgan said he had been home for about an hour, and denied
knowledge of any damage to the vehicle. He consented to inspecting the truck with the
trooper and staggered as he walked. Trooper Barrientes reported he then read Morgan
the Miranda warnings and asked him when he last drove the truck. Morgan responded he
had not driven the truck in a week. When asked when he last consumed alcohol, Morgan
stated that he was drinking in the house. When asked whether he had been to the liquor
store, he responded "not today." 

 Morgan refused the trooper's request that he submit to sobriety tests. After the
manager of the liquor store came to the residence and identified the truck as the vehicle
that struck the pole, and identified Morgan as its driver, Morgan was arrested. At the jail,
Morgan refused to provide a breath sample. (2) Because of his refusal, the Department
suspended his driver's license. See Tex. Transp. Code Ann. § 724.035 (Vernon Supp.
2006) (permitting the suspension or denial of a person's driver's license if he refuses the
request of a peace officer to submit to the taking of a specimen). 

 Morgan requested a hearing pursuant to Transportation Code section 724.041. Tex.
Transp. Code Ann. §724.041(a), (d) (Vernon Supp. 2006). At the hearing, the Department
offered four exhibits, including a supplemental form DIC-23 that contained the trooper's
offense report. (3) The exhibits were admitted without objection. (4) After the hearing, the State
Office of Administrative Hearings administrative law judge (ALJ) found in the Department's
favor on the pertinent issues listed in section 724.042, and entered an order authorizing
the license suspension. (5)
 Tex. Transp. Code Ann. §§ 724.042, 724.043 (Vernon Supp.
2006). Morgan's appeal of the ALJ's decision was heard in the district court. He now
appeals the district court's judgment approving the suspension of his license. 

 Review of the ALJ's decision by the trial court is based on the substantial evidence
rule. Tex. Transp. Code Ann. §§ 724.047, 524.041; Mireles v. Texas Dep't of Public
Safety, 9 S.W.3d 128, 131 (Tex. 1999). 

 Morgan raises two issues in his brief on appeal. By his first issue, he contends his
arrest was unlawful because Trooper Barrientes' testimony at the license suspension
hearing demonstrates he arrested Morgan without a warrant and that none of the
circumstances authorizing a warrantless arrest under Chapter 14 of the Code of Criminal
Procedure were present. Through his second issue Morgan posits that evidence of the
unlawful arrest and his subsequent refusal to provide a breath specimen was inadmissible
in the license suspension hearing, preventing the Department from meeting its burden
under section 724.042.

 The Department responds initially that Morgan's appellate contentions were not
preserved for review, and we agree. Via his second issue, Morgan urges the applicability
of the exclusionary rule incorporated in article 38.23 of the Code of Criminal Procedure.
Tex. Code Crim. Proc. Ann. art. 38.23. Citing that statutory provision and Mapp v. Ohio,
367 U.S. 643, 655, 81 S.Ct. 1684 (1961), he contends evidence of his refusal to provide
the breath specimen is inadmissible and cannot be used against him to support the
findings required under section 724.042. Morgan acknowledges that the license
suspension hearing is a civil matter. See Tex. Transp. Code Ann. § 724.048(a)(1) (Vernon
1999) (so stating). Nevertheless, he argues the hearing is "quasi-criminal" in nature, and
subject to the Code of Criminal Procedure. He cites no authority for this proposition, and
we need not address it in this case. Assuming, arguendo, that Morgan's warrantless arrest
contravened the requirements of Chapter 14 of the Code of Criminal Procedure, (6) and
assuming further that fact would have precluded admission at the license suspension
hearing of evidence of his arrest and subsequent refusal to provide the specimen, the
record of the hearing reflects no objection to admission of such evidence. As noted,
Morgan's counsel affirmatively stated he had no objection to the Department's exhibits. 
Under our state's criminal jurisprudence, Morgan therefore may not complain on appeal
about admission of the evidence. Moody v. State, 827 S.W.2d 875, 889 (Tex.Crim.App.
1992); Reed v. State, 487 S.W.2d 78, 80 (Tex.Crim.App. 1972) (complaint of admission
of fruit of warrantless search not preserved). See also Texas Dep't of Public Safety v.
Pruitt, 75 S.W.3d 634, 639 (Tex.App.-San Antonio 2002, no pet.) (addressing objection
to admission of similar DPS report); Tex. R. App. P. 33.1 (error preservation generally
requires timely request, objection or motion in trial court); Tex. R. Evid. 103(a)(1) (timely
objection to admission of evidence, or motion to strike, required). 

 Accordingly, we overrule Morgan's second issue, and find it unnecessary to address
his first. The district court's judgment is affirmed.

 James T. Campbell

 Justice

 
1. The vehicle that was located matched the description with the exception that its
Texas license plate bore the number 78M-XH1 rather than the number 78M-HX1 reported
by the liquor store manager.
2. The record includes the Department's form DIC-24, signed by Morgan,
documenting his refusal to give the breath specimen. See Tex. Transp. Code Ann. §
724.032 (Vernon Supp. 2006) (providing for a written "refusal report").
3. The offense report contains the facts surrounding Morgan's arrest that we have
recited, detailing the trooper's actions and the events that led to his arrest of Morgan. 
Morgan does not deny on appeal that the facts recited in the report gave the trooper
probable cause to believe Morgan was operating a motor vehicle in a public place while
intoxicated. 
4. The hearing record reflects Morgan's counsel's statement of "no objection" when
the Department offered its exhibits.
5. The issues at the administrative hearing included whether: (1) reasonable
suspicion or probable cause existed to stop or arrest Morgan; (2) probable cause existed
to believe that he was operating a motor vehicle in a public place while intoxicated; (3) he
was placed under arrest by the officer and was requested to submit to the taking of a
specimen; and (4) he refused to submit to the taking of a specimen on request of the
officer. Tex. Transp. Code Ann. § 724.042 (Vernon Supp. 2006). 

6. Neither the administrative law judge nor the district court expressly decided this
issue.



t out of jail, "get clean," and get her
children back. Ms. Pollard averred that she asked appellant to contact her when she got
out of jail but appellant had not done so. Ms. Pollard said she did not get an address from
appellant because appellant was in jail and she did not know how long appellant would be
there. Since the jail visit, Ms. Pollard had never heard from appellant and she stated the
police were looking for appellant.

 Ms. Pollard also testified that the children were "very bonded" with the Haynes and
were "doing well." Their behavior had improved, their grades were good, and they wanted
to be adopted by the Haynes. She averred they were happy and stable in their placement,
were participating in school activities, and she believed it would be in their best interest to
remain with the Haynes. 

 Kristie Lynn Haynes was also presented by the Department. She said that she and
her husband have two children, an eight-year-old and a 21-month-old baby. She said the
Passmore-Newell children had been living in her household since April 9, 2004 (the bench
hearing leading to the termination was held on September 20, 2004). She testified about
the fairly drastic changes in behavior in the children since they came to be with the
Haynes. She said that she and her husband wanted to adopt the children because "I love
them, because I feel like they need permanency" and "[t]hey need to know where they're
going to be the rest of their life." She also stated that the children need a home
environment in which "they know that they're going to get all the love and affection that
they could ever want."

Discussion

 The natural right existing between a parent and a child is of such a degree as to be
of constitutional dimensions. Santosky v. Kramer, 455 U.S. 745, 758-759, 102 S.Ct. 1388,
1397-98, 71 L.Ed.2d 599 (1982); Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976). 
Because of this, reviewing courts strictly scrutinize termination proceedings. In re G.M.,
596 S.W.2d 846 (Tex. 1980). Indeed, a strong presumption exists that the best interest
of the child is usually served by maintaining a parent-child relationship. Id. at 847. Due
process requires that a necessity for termination of parental rights be shown by clear and
convincing evidence. Id. The clear and convincing standard requires "the measure or
degree of proof that will produce in the mind of the trier of fact a firm belief or conviction
as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. §101.007
(Vernon 2002) (the Code). 

 In a case that involves parental rights termination such as this one, the reviewing
court, considering a legal sufficiency challenge, must look at all the evidence in a light most
favorable to the judgment and must assume that the fact finder resolved disputed facts in
favor of its finding if a reasonable fact finder could do so. In re J.F.C., 96 S.W.3d 256, 266
(Tex. 2002). However, that does not mean that the reviewing court must disregard all
evidence that does not support the finding because to do so could skew the analysis of
whether there is clear and convincing evidence. Id. The reviewing court should only
sustain a challenge to the legal sufficiency of the evidence when the court determines that
no reasonable fact finder could form a firm belief or conviction that the matter that must be
proven is true. Id.

 In reviewing a factual sufficiency challenge, the reviewing court must give due
consideration to evidence that the fact finder could reasonably have found to be clear and
convincing. Id. The question, then, is whether the evidence produced is such that a fact 
finder could reasonably form a firm belief or conviction about the truth of the movant's
allegations. Id. Therefore, the reviewing court should consider whether disputed evidence
is such that a reasonable fact finder could not have resolved that disputed evidence in
favor of its finding. Id. Thus, if in light of the entire record, the disputed evidence that a
reasonable fact finder could not have credited in favor of the finding is so significant that
a fact finder could not have reasonably formed a firm belief or conviction, then the
evidence is factually insufficient. Id. If the reviewing court concludes the evidence is
factually insufficient, it must detail in its opinion why it concluded that a reasonable fact
finder could not have credited the disputed evidence in favor of the finding. Id. at 266-67. 

 To terminate parental rights, the Department must prove by clear and convincing
evidence that 1) a parent committed at least one predicate act or omission harmful to the
child, and 2) the termination of parental rights is in the child's best interest. Tex. Fam.
Code Ann. §161.001 (Vernon Supp. 2005). The clear and convincing standard does not
mean that the evidence must negate all reasonable doubt or that the evidence must be
uncontroverted. The reviewing court must recall that the trier of fact has the authority to
weigh the evidence, draw reasonable inferences therefrom, and choose between
conflicting inferences. Also, the factfinder, as opposed to the reviewing body, enjoys the
right to resolve credibility issues and conflicts within the evidence. It may freely choose to
believe all, part, or none of the testimony espoused by any particular witness. In re R.D.S.,
902 S.W.2d 714, 716 (Tex. App.-Amarillo 1995, no writ). 

 In this case, the trial court found that appellant had committed four predicate acts
harmful to the children, including a finding that she had engaged in conduct that
endangered the physical or emotional well being of the children. In addressing the trial
court finding of endangering conduct, appellant argues that although it is not specifically
noted, "at some point in the children's lives, . . . the children were exposed to a person who
supplied [her]" with drugs. She argues that there are "no references in the record to tie any
type of lingering negative behaviors or ill effects to the children caused by" her conduct.

 Texas courts have noted that "endanger" means "to expose to loss or injury; to
jeopardize." In re M.C., 917 S.W.2d 268, 269 (Tex. 1996), quoting Texas Dep't of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). Although "endanger" means more than
a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment,
it is not necessary that the conduct be directed at the child or that the child actually suffers
injury. Id. Endangerment of a child does not have to be established as an independent
proposition but can be inferred from parental misconduct alone. Texas Dep't of Human
Servs. v. Boyd, 727 S.W.2d at 533. Indeed, Texas courts look to what the parents did both
before and after the child's birth to determine whether termination is necessary. In re D.M.,
58 S.W.3d 801, 812 (Tex. App.-Fort Worth 2001, no pet.). Endangerment may include
evidence of drug addiction and its effect on a parent's life and his ability to parent. In re
U.P., 105 S.W.3d 222, 234 (Tex. App.-Houston [14th Dist.] 2003, pet. denied).

 A parent's engaging in illegal drug activity after agreeing not to do so in a service
plan for reunification with her children is sufficient to establish clear and convincing proof
of voluntary, deliberate, and conscious conduct that endangered the well-being of her
children. See Robinson v. Texas Dep't of Protective & Regulatory Servs., 89 S.W. 3d 679,
686-87 (Tex. App.-Houston [1st Dist] 2002, no pet.). Conduct that subjects a child to a life
of uncertainty and instability because of the probability that its parent or parents will be
jailed because of illegal conduct thereby leaving the child alone, endangers the child's
physical or emotional well-being. See In re C.L.C., 119 S.W.3d 382, 393 (Tex. App.-Tyler
2003, no pet.).

 The evidence in this case, which we have enumerated above in considerable detail,
shows that at the time of the initial intake, appellant was living in a car, was not caring
properly for her children, and was using illegal drugs. She allowed her children to be
around her drug supplier whom she knew was dealing drugs. There was evidence that she
and her drug dealer used drugs together around the children and that she supervised the
children while under the influence of drugs. Appellant also failed to complete drug
rehabilitation programs she had begun, and she continued to engage in illegal drug activity
after the Department had become involved and she had agreed she would not do so.

 The clear and convincing evidence was amply sufficient to justify the trial court's
evident conclusion that appellant's drug addiction and lifestyle had created an aura of
uncertainty and instability for her children. In that connection, we note appellant's
argument that there are no references to the record to tie any type of lingering negative
behavior or ill effects to the children caused by her conduct. However, our supreme court
has explicated that the requisite endangerment to a child may be inferred from parental
misconduct and it is not necessary that such misconduct be directed at the child or that the
child actually suffers injury. Texas Dep't of Human Servs v. Boyd, 727 S.W.2d at 533; see
also In re M.J.M.L., 31 S.W.3d 347, 353 (Tex. App.-San Antonio 2000, pet. denied).

 Even if multiple grounds for termination are alleged, only one predicate finding under
section 161.001(1) of the Code is required to terminate parental rights. In re N.H., 122
S.W.3d 391, 401 (Tex. App.-Texarkana 2003, pet. denied). That being so, our finding that
sufficient clear and convincing evidence existed to support that finding pretermits the
necessity for addressing the remaining statutory grounds for termination found by the trial
court.

 Even so, in addition to establishing that appellant engaged in endangering conduct,
section 161.001 of the Code states that it is also the Department's burden to prove by clear
and convincing evidence that the termination of appellant's parental rights was in the
children's best interest. Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2005). In seeking
reversal, appellant argues that the evidence is insufficient to sustain the trial court finding
that termination of the parent-child relationship between appellant and the children was in
the best interest of the children.

 In the seminal case of Holley v. Adams, 544 S.W.2d 367 (Tex. 1976), the court
listed nine identifiable factors among those to be considered in determining the best
interest of children in termination cases such as this one. Those factors are the desires
of the children, the emotional and physical needs of the children now and in the future, the
emotional and physical danger to the children now and in the future, the parental abilities
of the individuals seeking custody, the programs available to assist those individuals to
promote the best interests of the children, the plans for the children by the parties seeking
custody, the stability of the home or proposed placement, the acts or omissions committed
by the parent that might indicate that the existing parent-child relationship is not a proper
one, and any excuses for the acts or omissions committed by the parent. Id. at 372. 

 As the court indicated in its opinion, that list is by no means exhaustive but is a very
good point of reference to aid in assessing the trial courts' rulings. Evidence proving one
or more statutory ground for termination may be considered in assessing the probative
evidence that termination is in the best interest of the children. In re C.H., 89 S.W.3d 17,
28 (Tex. 2002). Additionally, a best-interest analysis may consider circumstantial
evidence, subjective factors, and the totality of the evidence as well as the direct evidence. 
In re S.H.A., 728 S.W.2d 73, 86-87 (Tex. App.-Dallas 1987, writ ref'd n.r.e.). A parent's
unstable lifestyle, lack of income, and lack of a home may also be considered in a
determination of a parent's ability to provide for a child's emotional and physical needs and
may also threaten the physical well being of the child. In re C.A.J., 122 S.W.3d 888, 894
(Tex. App.-Fort Worth 2003, no pet.).

 In regard to the desires of the children, Ms. Gregg testified that the children were
happy about being placed with Mr. and Mrs. Haynes and that the children appeared to
bond with the couple. Indeed, Ms. Pollard averred that from her observations of the
children in the Haynes' home, the children were very bonded, were happy, and were doing
well. 

 With regard to the emotional and physical needs of the children now and in the
future and the emotional and physical danger to them now and in the future, the evidence
is sufficient to sustain a trial court belief that appellant's drug history clearly posed an
emotional and physical danger to the children. The evidence supports a conclusion that
appellant's relapse after repeated drug treatment programs is also something to be validly
considered as bearing upon the question of potential emotional and physical danger to the
children. In that connection, Ms. Pollard testified that in July of 2004, when she found
appellant in the Randall County jail, almost two full years after the Department first
investigated her because of her drug use, she still was not free from her drug addiction and
still admitting her desire to "get clean" from her drug addiction. As a fact finder, the trial
judge could have reasonably concluded that the likelihood of appellant continuing drug use
was very strong. 

 Suffice it to say, under the clear and convincing evidence in this case, the trial judge
could reasonably conclude that appellant was not stable emotionally and could not meet
the emotional and physical needs of the children either in the present or in the future. 
Additionally, the evidence would support a conclusion that appellant's drug use and
demonstrated association with other drug users would constitute a danger emotionally and
physically both in the present and in the future. A trier of fact may measure a parent's
future conduct by her past conduct and determine that it is in the child's best interest to
terminate parental rights. In re D.L.N., 958 S.W.2d 934, 941 (Tex. App.-Waco 1997, pet.
denied), overruled on other grounds by In re C.H., 89 S.W.3d 17 (Tex. 2002). 

 In considering whether the evidence is sufficient to sustain the termination of her
parental rights, appellant suggests that Horvatich v. Texas Dep't of Protective & Regulatory
Servs, 78 S.W.3d 594 (Tex. App.-Austin 2002, no pet.) is a "very good case to guide this
Court in reviewing the record," and in determining whether the evidence in this case is
sufficient to justify the termination of her parental rights. In Horvatich, the court found the
evidence was not sufficient to sustain the termination of a mother's parental rights. 
However, in doing so, the appellate court noted there was no testimony from anyone who
had personal knowledge of the children at the time of trial and that there was no testimony
concerning how the children were doing in foster care, whether they were being considered
for adoption, the likelihood of their adoption, the Department's plan for placement of the
children, whether the children were currently together in their foster care, and whether the
Department would attempt to place all three children together. Id. at 601-02.

 The evidence in the Horvatich case is different from that in this record. Here, Ms.
Pollard, the caseworker at the time of trial, and Mrs. Haynes, the children's current foster
placement person, had personal knowledge of the children at the time of trial. Both of
them testified that the children were happy in their placement, that they had bonded with
the foster parents, they were stable in their placement, and that they wanted to be adopted
by the Haynes. Mrs Haynes testified about the children's activities and the improvement
in their attitude since they came to the Haynes. The children were together with the
Haynes, the Haynes wanted to adopt the children and the Department's plan was to
facilitate that adoption.

 Suffice it to say, the evidence before the trial court was sufficiently clear and
convincing to justify its decision. Accordingly, appellant's point is overruled and the
judgment of the trial court is affirmed.

 John T. Boyd

 Senior Justice

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2005).